**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA WOLFE,<br>505 East Cumberland Street,<br>Lebanon, Pennsylvania 17042 | : <br> : <br> : <br> : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff, | : <br> : | |
| v. | : <br> : | CASE NO. |
| COMMONWEALTH OF PENN<br>DEPARTMENT OF HUMAN<br>SERVICES<br>OFFICE OF DEVELOPMENTAL<br>PROGRAMS<br>625 Forster Street, # 5<br>Harrisburg , Pennsylvania 17120 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| Defendant. | : <br> : | |

## COMPLAINT

Plaintiff, Lisa Wolfe, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 *et seq*., the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq*.; the Family First Corona Response Act ("FFCRA"), Pub. L. No. 116-127, 134 State. 178 (Mar. 18, 2020); and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955 *et seq*.

## I. PARTIES AND JURISDICTION

1.     Plaintiff, Lisa Wolfe (hereinafter ("Plaintiff") or ("Ms. Wolfe") or ("Wolfe"), is an adult individual residing in Lebanon, Pennsylvania with a mailing address of 505 East Cumberland Street, Lebanon, Pennsylvania 17042.

2.     Defendant, the Commonwealth of Pennsylvania, Department of Human Services, Office of Developmental Programs, (hereinafter ("Defendant") or ("ODP"), is a business corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a prinicpal place of business at 625 Forster Street #5, Harrisburg , Pennsylvania 17120.

3.     At all times material hereto, Defendant employed Plaintiff at its 625 Forster Street #5, Harrisburg, PA location as set forth above and qualified as Plaintiff's employer.

4.     Defendant was Plaintiff's employer from June 10, 2019, until she was terminated on February 8, 2021.

5.     At all times, Defendant met the definition of "employer" under the ADA, the FMLA, the FFCRA, and the PHRA.

6.     At all times material hereto, Defendant acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

2

7.    Defendant is liable for the actions of its agents, servants and employees performed within the course of their employment through the doctrine of Respondent Superior.

8.    This Complaint alleges retaliation and discrimination on the basis Wolfe's relation to her disabled husband, in violation of the Americans with Disability Act, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"); interference and retaliation with Wolfe's rights in violation of the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA"); violation of the Family First Corona Response Act ("FFCRA"), Pub. L. No. 116-127, 134 State. 178 (Mar. 18, 2020); and pendent state law claims arising under the provisions of the laws of the Commonwealth of Pennsylvania, to wit, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq*. ("PHRA").

9.    Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

10.    This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

11.    Additionally, pursuant to 28 U.S.C. §1367, this Court has Supplemental jurisdiction to hear all of Wolfe's claims arising under the Pennsylvania state law.

12.     The venue is properly laid in this district because the Defendant conducts business in this district and because a substantial part of the acts and omissions giving rise to the claims set forth herein occurred in this judicial district. 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiff was working in the Middle District of Pennsylvania at the time of the illegal conduct by the Defendant, as set forth herein.

13.     On March 2, 2021, Wolfe filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2021-01707, alleging discrimination, retaliation and wrongful discharge from her employment due to the actions of Defendant, and dual filed with the Pennsylvania Human Relations Commission ("PHRC").

14.     Wolfe has been advised of her individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated September 7, 2021 (attached as "Exhibit A").

15.     Wolfe has exhausted the administrative remedies available to her, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

## II. FACTS

16.     On or about June 10, 2019, the Defendant hired Mrs. Wolfe as an Executive Secretary.

4

17.    Plaintiff's employer, the Office of Developmental Programs is a department within the Department of Human Services of the Commonwealth.

18.    All of the Department of Human Services' secretaries were allowed to telework during the relevant time period at issue.

19.    Plaintiff is the only Executive Secretary in her department.

20.    Executive Assistant Lisa Wagner and Administrative Assistant Brandy Peterson both worked in the Office of Developmental Programs and were allowed to telework.

21.    At all times material hereto, Plaintiff was qualified for her position with the Defendant and performed her work without any complaint or issue until the time her employment was terminated by the Defendant.

22.    Plaintiff had been employed by the Commonwealth since 2003 and had always met job and performance expectations.

23.    On November 19, 2019, Plaintiff had an Employee Performance Review wherein her overall rating was "Satisfactory" meaning that she met expectations and standards of the job in a fully adequate way.

24.    On or about March 13, 2020, all Defendant's employees were sent home for three weeks due to COVID- 19.

25.    Mrs. Wolfe was forced to report to work in-person during this time.

26.     Only Plaintiff and two secretaries, were reporting to work in-person during this time.

27.     The two secretaries were voluntarily reporting to work in-person.

28.     Plaintiff's co-workers who were not allowed to telework received paid time off/comp time.

29.     Plaintiff was not allowed to telework and did not receive paid time off/comp time, unlike her co-workers.

30.     After about three weeks of not receiving paid time off/comp time, Plaintiff questioned Ms. Wagner.

31.     Ms. Wagner responded to Plaintiff's inquiry by telling her to flex her hours. Plaintiff's co-workers were not required to flex their hours.

32.     On or about April 8, 2020, Mrs. Wolfe received a phone call from Ms. Wagner.

33.     During this call, Mrs. Wolfe notified Ms. Wagner that her husband has severe underlying health issues related to his heart and lungs, that any introduction of COVID-19 would be deadly due to his high risk.

34.     During this call Mrs. Wolfe requested telework but her request was denied.

35.     During the call, Mrs. Wolfe was told by Ms. Wagner that, "she didn't want her working at ODP and that she wanted Elizabeth Fee to do her job instead of her."

36.     After her request for telework was denied, Mrs. Wolfe began using personal leave to stay home to keep her husband safe from contracting COVID-19.

37.     Mrs. Wolfe used personal leave from April 8, 2020, until the end of May 2020.

38.     On April 30, 2020, Plaintiff emailed Ms. Wagner regarding filing for unemployment.

39.     During this time, Plaintiff was allowed to telework because she had told Defendant that she was going to file for unemployment.

40.     When Plaintiff asked Defendant to send her equipment to telework they asked Plaintiff to upgrade her internet service to telework at her own expense.

41.     All other teleworking employees of Defendant had State issued laptops and cell phones.

42.     The laptop and cell phone provided to Plaintiff by Defendant were both defective.

43.     The cell phone that was sent to Plaintiff had the wrong sim card in it.

44.     Plaintiff tried for three weeks to get her laptop fixed by Defendant until Defendant finally sent her a new one.

45.     During the time that Plaintiff was teleworking, Ms. Wagner told Labor Relations that Plaintiff's internet service wasn't good enough to telework.

46.     For all relevant time periods, Plaintiff has the same high-speed internet as the Defendant.

47.     In July of 2020, Dauphin County, where Defendant was located and Plaintiff resided, had become an epicenter of the COVID-19 pandemic.

48.     On or about July 9, 2020, Kristin Ahrens, Deputy Secretary and Plaintiff's boss, took Plaintiff off of telework and requested that she return to the building to work in-person on July 13, 2020.

49.     In this email, Ms. Ahrens also noted that the only other individuals in the office were a worker on the 5th floor and a worker on the 4th floor.

50.     Ms. Ahrens also changed Plaintiff's work hours to end at 5:30 p.m. to 6:00 p.m. at night which effectively ruined Plaintiff's bus transportation because there was only one bus at the time running back and forth to Harrisburg from Plaintiff's home area.

51.     No other employees were required to return to the building.

52.     Mrs. Wolfe questioned Ms. Ahrens about the change to her work hours and advised her that she would not be able to work from the building, especially to such late of a time because she relied on public transportation and would

be at a higher risk for contracting Covid-19 and bringing it home to her husband who is critically ill.

53.    Ms. Ahrens responded, "that she was the Deputy Secretary and could do what she wanted."

54.    Following the call with Ms. Ahrens, Plaintiff filed for FMLA leave for herself.

55.    Ms. Wagner found out about Plaintiff's attempt to apply for FMLA leave for herself and got Labor Relations involved.

56.    Labor Relations advised Plaintiff that any request for additional leave would be denied. They also advised her that if she were to file for unemployment, this would also be denied.

57.    Due to Labor Relations advising Plaintiff that they would deny any future leave requests, on or about July 27, 2020, Mrs. Wolfe applied for FMLA leave so that she could provide as needed care for her disabled husband.

58.    This FMLA leave request was approved.

59.    On or around the same time, Plaintiff was forced to leave the State issued laptop and cell phone on the porch or be fired.

60.    In August of 2020, Plaintiff contacted the U.S. Department of Labor and requested that they investigate Defendant's denying her request to telework.

61.    Investigator DeAngelo Aboutanos contacted Ms. Wagner and she advised that Plaintiff had taken it upon herself to work overtime and to take meeting minutes for the COVID-19 meetings.

62.    Ms. Wagner's assertions to Mr. Aboutanos were untrue as Plaintiff was following Ms. Wagner's directive to work the overtime hours and take the meeting minutes.

63.    Plaintiff received a call from Terry Luciano from Labor Relations advising that Plaintiff was walking on dangerous ground and that the doctor's notes that Plaintiff had submitted from her husband's doctor indicating that he was a high-risk individual and that she should be allowed to telework to reduce his potential exposure to COVID, didn't mean anything because Plaintiff was not hired to telework.

64.    According to the Center for Disease Control, individuals with Plaintiff's husband's severe health conditions are at an increased risk of severe illness in the event that they contract COVID-19.

65.    Plaintiff's approved FMLA leave expired at the end of December 2020.

66.    On December 30, 2020, Mrs. Wolfe sent an email to Ms. Ahrens along with two doctor's letters requesting that she be allowed to return to work by

telework upon the expiration of her FMLA, be granted a leave of absence or be granted a transfer to a different department.

67.    On January 15, 2021, Ms. Ahrens sent Plaintiff a letter that her request for continuing FMLA leave had been denied and that her absence from work beginning on January 1, 2021, placed Plaintiff in an unauthorized, unexcused leave status.

68.    Ms. Ahrens acknowledged that Plaintiff could return to work, that teleworking was not an option at that time, and that Plaintiff did not request an extended leave without pay so she had to return to work immediately.

69.    Ms. Ahrens further advised Plaintiff that if she was unable to work full-time, full duty, she would need to submit a letter of resignation to Ms. Wagner.

70.    Ms. Ahrens's letter further advised that if Plaintiff did not elect to resign or return to work, she could choose to attend a pre-disciplinary conference on January 26, 2021.

71.    Plaintiff declined this invitation to attend the pre-disciplinary conference due to the way that she was treated by Defendant after she had filed the complaint with the U.S. Department of Labor in August of 2020.

72.    Mrs. Wolfe refused to resign and was terminated on February 8, 2021.

73.    Ms. Wolfe received a termination letter stating that her employment was terminated because she would not return to work in-person.

74.    On June 16, 2021, unemployment sent Plaintiff a Qualifying Separation Determination letter stating that she qualifies for unemployment benefits as of April 11, 2021, and that she was discharged for unknown reasons.

75.    Plaintiff's co-workers continued to telework through August 10, 2021.

76.    Wolfe avers that Defendant terminated her employment because she requested a leave of absence to care for her disabled husband.

77.    As a direct and proximate result of the Defendant's conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

### III. CAUSES OF ACTION

COUNT I
AMERICANS WITH DISABILITIES ACT
DISPARATE TREATMENT

78.    Wolfe incorporates all the preceding paragraphs as if they were set forth at length herein.

79.    Wolfe is a qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

80.    Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

81.     Based on the foregoing, Wolfe alleges that Defendant violated the ADA by taking an adverse employment action against her due to her association with her husband, who is disabled with heart and lung impairments.

82.     Defendant's conduct in forcing the termination of Plaintiff's employment is an adverse action, was taken as a result of her association with her husband and constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*

83.     Per the ADA, employers may not treat workers with caregiving responsibilities, including caregivers of individuals with disabilities, disparately when compared to workers without caregiving responsibilities.

84.     Defendant's conduct violated the ADA by holding Plaintiff to a different standard in not allowing her access to benefits and privileges and work-place flexibility such as the ability to telework, compared to employees without care giving responsibilities.

85.     Defendant's conduct caused Wolfe to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Wolfe has also sustained work loss, loss of opportunity, and

a permanent diminution of her earning power and capacity and a claim is made therefore.

86.   Wolfe prays that Defendant be required to provide all appropriate remedies available under the ADA.

87.   As a result of the conduct of Defendant Wolfe hereby demands punitive damages.

88.   Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* Wolfe demands attorneys fees and court costs.

COUNT II
VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
INTERFERENCE

89.   Wolfe incorporates the preceding paragraphs as if set forth more fully at length herein.

90.   As set forth above, Wolfe was entitled to medical leave pursuant to the FMLA, 29 U.S.C. §2601, *et seq.*

91.   Wolfe was qualified to take FMLA leave as she had been employed by Defendant for at least 12 months, and had at least 1,250 hours of service during the previous 12-month period.

92.   Wolfe's husband had a "serious health condition" that required "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

93.    At all times Defendant knew, or should have known, of Wolfe's need for FMLA leave in order to care for her husband's serious medical condition.

94.    As described above, Defendant interfered with, restrained and denied Wolfe's exercise and/or attempts to exercise her rights under the Family and Medical Leave Act.

95.    As a proximate result of Defendant's conduct, Wolfe sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, and loss of back pay, and Wolfe has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

96.    As a result of the conduct of Defendant, Wolfe hereby demands liquidated damages.

97.    Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq* Wolfe demands attorney's fees and court costs.

## COUNT III
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
## RETALIATION

98.    Wolfe incorporates all the preceding paragraphs as if they were set forth at length herein.

99.    Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C)

Wolfe was eligible for Family and Medical Leave Act Leave.

100.   At all times material, Defendant knew, or should have known, of Wolfe need for FMLA leave medical leave due to her husband's serious medical condition.

101.   Wolfe gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

102.   Nonetheless, Defendant terminated Wolfe.

103.   Defendant's motivation for terminating Wolfe was connected causally to Wolfe's request for leave under FMLA-qualifying reasons.

104.   Defendant acted in bad faith by retaliating against Wolfe in violation of the FMLA.

105.    As a direct and proximate result of Defendant's discharge of Wolfe, Wolfe is and was deprived economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Wolfe's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

106.   Wolfe demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of

all leave and health benefits, to which Wolfe was entitled, and any additional un-

paid leave up to the maximum permitted by the FMLA including but not limited to

doubling the damages proven inclusive of all wages, salary, employment benefits

or other compensation denied or lost.

107.   Wolfe further demands favorable judgment against Defendant for all

interest on the monetary benefits calculated at the prevailing rate, an additional

amount equal to those sums, as liquidated damages under §107(a), fees and

costs including the allowance of reasonable attorneys' fees, expert witness fees

and other costs of the action against Defendant and such other orders and fur-

ther relief as may be necessary and appropriate to effectuate the objectives of

the FMLA.

COUNT IV
FAMILIES FIRST CORONA RESPONSE ACT
INTERFERENCE AND RETALIATION

108.   Wolfe incorporates all the preceding paragraphs as if they were set

forth at length herein.

109.   At all times relevant hereto, Defendant was engaged in commerce,

was in an industry or activity affecting commerce, and each employed 50 or more

employees for each working day during each of 20 or more calendar workweeks in

the current or preceding calendar year.

110.   Wolfe had, at all times relevant hereto, been employed by Defendant for at least thirty (30) days making her eligible for leave under the Emergency Family Medical Leave Expansion Act ("EFMLEA") and Emergency Paid Sick Leave Act ("EPSLA") components of the FFCRA.

111.   Although the EPSLA states that "employer of an employee who is a health care provider . . . may elect to exclude such employee from the application of" the EPSLA, Wolfe – was an Executive Secretary employed by the Common-wealth and is thus covered under the EPSLA.

112.   Wolfe requested leave because she was unable to work in-person be-cause of a bona fide need to care for her husband, who has serious medical condi-tions that the CDC recognized as increasing the risk of death from COVID. Plain-tiff consulted health care professionals and they opined that extra precautions such as the need for Plaintiff to telework were warranted.

113.   Wolfe notified Defendant that she required leave due to FFCRA for qualifying reasons.

114.   Defendant failed to provide Wolfe was 12 weeks of paid sick leave.

115.   Defendant's motivation in terminating Wolfe was causally related to her assertion of FFCRA qualifying leave.

116.   As a result of Defendant's interference with Wolfe's entitled to FFCRA leave, and Defendant's violation of the anti-retaliation provisions of the

18

FFCRA and its associated regulations, Wolfe has suffered damages in the nature of pain and suffering and emotional distress, and is entitled to the recovery of actual, compensatory and punitive damages, as well as pre and post-judgment interest, attorneys' fees, costs, and such other compensation and legal remedies, and also including such declaratory and injunctive or other equitable relief, as the law allows.

COUNT V
VIOLATION of the PENNSYLVANIA HUMAN RELATIONS ACT

117.   Wolfe incorporates all the preceding paragraphs as if they were set forth at length herein.

118.   Based on the foregoing, Wolfe alleges that Defendant violated the Pennsylvania Human Relations Act ("PHRA") by subjecting her to discrimination on the basis of her association with her disabled husband.

119.   Defendant's conduct caused Wolfe to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Wolfe has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

120.   Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Wolfe demands attorneys' fees and court costs.

## IV. RELIEF REQUESTED

**WHEREFORE,** Plaintiff, Lisa Wolfe, demands judgment in her favor and against the Defendant in an amount in excess of $150,000.00 together with:

A.   Reinstatement of position with a comparable salary and benefits including, medical, vacation and sick time, in addition to any other associated employee benefits to which she may be entitled.

B.   Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering;

C.   Punitive damages;

D.   Attorney's fees and costs of suit;

E.   Reimbursement for medical bills;

F.   Reimbursement for Payment of State Payroll Overpayment;

G.   Interest, delay damages; and,

H.   Any other further relief this Court deems just proper and equitable.

Date: September 27, 2021          **LAW OFFICES OF ERIC A. SHORE, P.C.**

20

BY: */s/ Mary LeMieux-Fillery*
**MARY LEMIEUX-FILLERY, ESQUIRE**
**(Pa Id. No.: 312785)**
Two Penn Center, Suite 1240
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
Tel.: (267) 546-0132
Fax: (215) 944-6124
Email: maryf@ericshore.com
*Attorneys for Plaintiff, Lisa Wolfe*

## VERIFICATION

I hereby certify that all statements made are true to the best of my· knowledge and information. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. 5 4904 relating to unsworn falsification to authorities.

Date: 09/27/2021                                Signature:

Lisa Wolfe